# Thomas *v.* The State.

## *Murder.*

(Decided June 3, 1914.  65 South. 863.)

1. *Appeal and Error; Reservation of Ground; Exceptions.*—Where the defect was not pointed out by objection to the question in the trial court, an objection that a question propounded to a witness was leading cannot be considered on appeal.

2. *Same; Harmless Error; Evidence.*—If there was error in permitting a witness to testify that there was a difference in size be-

tween a 32 and 38-caliber pistol ball, it was harmless, as it is a matter of common knowledge and observation.

3. *Witnesses; Leading Question; Discretion.*—It is within the discretion of the trial court to permit leading questions to a witness, and the court's action will not be reviewed on appeal unless abuse is shown.

4. *Trial; Reception of Evidence; Objection.*—Unless the testimony sought to be elicited is patently illegal and irrelevant for any purpose a general objection to a question will not avail anything.

5. *Homicide; Evidence.*—In a homicide case the state is properly permitted to show by the arresting officer that defendant appeared nervous when arrested, it being a part of the res gestæ.

6. *Same.*—Where the prosecution depended on circumstantial evidence the state was properly permitted to show facts which were without probative force when standing alone, but which when coupled and connected by evidence with other facts became material.

7. *Same.*—Where a witness had testified that the bullets extracted from the body of deceased weighed 99¼ grains, and the evidence was altogether circumstantial, it was proper to permit the state to show that the pistol which the evidence tended to show belonged to defendant, and which was found in his possession next morning, when fired into a plank, the bullet extracted therefrom weighed 96¼ grains, as having some tendency to connect defendant with the commission of the crime.

8. *Same.*—Any fact material to the main fact may be proved as well by circumstantial evidence as by positive evidence, as the main fact itself may be proved.

9. *Charge of Court; Reasonable Doubt.*—A charge asserting that if the jury have a reasonable doubt whether defendant was at V.'s saloon at the time deceased was killed, the verdict should be not guilty, was properly refused.

10. *Same.*—A charge asserting that it is the humane provision of the law upon the evidence, there should not be a conviction unless to a moral certainty it excludes every reasonable hypothesis other than that of guilt, was properly refused.

11. *Same.*—It is proper to refuse charges that the evidence is insufficient to convict if it can be reconciled with the theory that some other person other than defendant may have done the killing, but which do not require such theory to be based upon the evidence.

12. *Same.*—A charge asserting that if the prosecution has failed to prove the guilt of defendant beyond a reasonable doubt, the jury must acquit, is properly refused where any of the testimony elicited from defendant's witnesses tend to incriminate him.

13. *Same.*—Charges asserting that if the jury are unable from all the evidence to determine beyond a reasonable doubt and to a moral certainty how the killing occurred, they should acquit, are properly refused.

14. *Same; Alibi.*—Charges asserting that if under the evidence someone else other than defendant may have killed deceased, the verdict should be not guilty, are properly refused.

[Thomas v. The State.]

15. *Same.*—Charges asserting that there should not be a conviction on circumstantial evidence unless it be of the strongest and highest character, are properly refused.

16. *Same; Invading Jury's Province.*—A charge asserting that the statement admitted as to what an absent witness would have testified was entitled to the same consideration as if the witness had testified to such statement was properly refused as giving undue prominence to parts of the evidence, as well as invading the province of the jury.

APPEAL from Colbert Circuit Court.

Heard before Hon. C. P. ALMON.

Phil Thomas was convicted of murder in the second degree, and he appeals. Affirmed.

The exceptions to evidence are sufficiently stated in the opinion. The following charges were refused to defendant:

(1) If you have a reasonable doubt as to whether or not defendant was at Blankenship's saloon at the time Henry Freeman was killed, your verdict should be not guilty.

(2) If under all the evidence some one else than defendant may have killed deceased, Henry Freeman, then your verdict should be not guilty.

(3) The humane provisions of the law is that there should not be a conviction upon the evidence unless to a moral certainty it excludes every other reasonable hypothesis than that of the guilt of the accused; no matter how strong may be the facts, if they can be reconciled with the theory that some other person may have done the act, then the guilt of the accused is not shown by that full measure of proof that the law requires.

(4) The evidence against this defendant is wholly circumstantial, and I charge you there should not be a conviction upon circumstantial evidence, unless it is of the strongest and highest.

(5) The only foundation for a verdict of guilty in this case is that the entire jury shall believe from the evidence beyond a reasonable doubt and to a moral cer-

tainty that defendant is guilty as charged in the indictment, to the exclusion of every probability of his innocence, and every reasonable doubt of his guilt, and if the prosecution has failed to furnish such measure of proof, and to so impress the minds of the jury of defendant's guilt, they should find him not guilty.

(7) No matter how strong the circumstances, if they can be reconciled with the theory that one other than the defendant committed the crime for which he is on· trial, he should be acquitted.

(9) If you are unable from all the evidence to determine beyond a reasonable doubt and to a moral certainty how the killing of Henry Freeman occurred, you ought to acquit defendant.

(11) You should consider the written statement of the evidence of the witness Newsome just as if he had been on the stand and sworn to the facts set forth in said statement.

KIRK, CARMICHAEL & RATHER, and JACKSON & DELONEY, for appellant. The court erred in permitting the witness to testify that defendant appeared nervous when arrested.—*Coleman v. State,* 87 Ala. 16; *Lewis v. State,* 96 Ala. 6; *Heninburg v. State,* 153 Ala. 13; *Bettis v. State,* 160 Ala. 3; *Knight v. State,* 160 Ala. 58. The question was highly leading that sought to elicit this fact.—Authorities supra. The evidence was also offensive to the opinion testimony rule.—*Weaver v. State,* 2 Ala. App. 202. Counsel discuss error relative to the admission of evidence as to the weight of the ball found in deceased's body, and as to the weight of the ball fired into a plank from the pistol supposed to belong to defendant.—1 Mayf. 320, 342; *Evans v. State,* 109 Ala. 11; *Buchanan v. State,* 109 Ala. 7; *Tesney v. State,* 77 Ala. 33; *U. S. Co. v. Granger,* 172 Ala. 456. Counsel discuss

the charges refused, but without further citation of authority.

R. C. BRICKELL, Attorney General, and T. H. SEAY, Assistant Attorney General, for the State. The court properly permitted it to be shown by the arresting officer that defendant appeared to be nervous and restless when arrested.—*Hainesworth v. State,* 136 Ala. 13; *Tigert v. State,* 143 Ala. 88; *Sims v. State,* 146 Ala. 109. Counsel discuss the other exceptions to evidence and the refused charges with the insistence that no error was committed, but they cite no authority in support thereof.

THOMAS, J.—The defendant was indicted for murder in the first degree, and convicted of murder in the second degree.

There was no eye witness to the killing, and the body of the deceased, Henry Freeman, was not discovered until several hours after his death. All the evidence as to the commission of the crime, and all the evidence tending to show that the defendant was the author thereof, was entirely circumstantial. These circumstances, however, were both strong and well-connected, and in our opinion were such, if believed, as to exclude every other reasonable hypothesis than that a homicide had been committed and than that defendant was guilty of the commission thereof.

In the course of the trial the defendant reserved some 92 exceptions to the rulings of the trial court, all of them relating, respectively, to the admission and rejection of evidence and to the refusal to give certain written charges, including the general affirmative charge requested by defendant. In response to the duty imposed upon us by law in criminal cases, we have not only carefully examined these exceptions, but have

searched the record for error, and our conclusion of the whole matter, succinctly stated, is that the defendant had a fair trial according to law, and that there was no injurious or prejudicial error committed by the trial court. The defendant is represented in briefs by two firms of learned lawyers, whose known ability is such, and whose interest in the cause of their client, and consequently in the reversal of the judgment, is deemed to be such, that we may affirm with assurance that they would not omit to urge upon our consideration any point raised by the record that had the least particle of merit. In view of this fact, and in view of the further fact, as before stated, that we are of the opinion that there is no merit in any of the exceptions, whether it be those urged or those not urged, and in view of the further fact that neither of them raises any new or novel question, or involves, in this ruling upon them, the establishment of any new precedent, we feel justified, although this is a criminal case and one of importance, in economizing time by confining our discussion to only such points as are insisted upon in the briefs of appellant's counsel. This we will do, believing no possible benefit, either to the defendant, to the profession, to the law, or to its administration could be subserved by a contrary course.

The first exception insisted upon has reference to the action of the trial court in overruling defendant's objection to the following question propounded by the solicitor to one of the state's witnesses: "Well, did you observe the manner and demeanor of this man [speaking of defendant] before you arrested him, and was it nervous or not?" The witness answered: "Yes, sir; he appeared nervous." One of the insistences, in brief, is that the question was leading. Conceding this to be true, that defect was not pointed out in either of the objections to the question, and, even if it had been, the

rule is that the trial court may, in its discretion, permit leading questions, and will not be reversed therefor unless it appears that the discretion was abused.— *Weaver v. State,* 2 Ala. App. 102, 56 South. 747. The only grounds of objection to the question, as disclosed by the record, are that the question calls for illegal, irrelevant, and immaterial matter. A specification of objection waives all others, and a general objection, as here, will avail nothing unless the testimony sought to be elicited by the question is patently illegal and irrelevant for any purpose.—Rule 33 of Circuit Court Practice, Civil Code, p. 1527, and cases there cited. Such is not the case here, as will appear, without the necessity of a discussion by us, from an examination of the following authorities: *Hainsworth v. State,* 136 Ala. 13, 34 South. 203; *Tagert v. State,* 143 Ala. 88, 39 South. 293, 111 Am. St. Rep. 17; *Sims v. State,* 146 Ala. 109, 41 South. 413; *Maddox v. State,* 159 Ala. 53, 48 South. 689.

There was no injury, if error, in permitting the state's witness, Dr. Maxwell, to testify that there was a difference in size between a 32 and 38-caliber pistol ball. It was a correct statement of a fact of common knowledge and observation, known as well to the jury as to the witness.

Nor was there error in permitting the witness to state that he extracted from the body of the deceased the balls or bullets found therein, and weighed them, and that one weighed 100 grains and the other 99¼ grains. These facts were merely links in the chain of circumstantial facts proved by the state, and from which the jury were asked to infer the guilt of defendant. Standing alone, they would have been without probative force, but when coupled and connected, as they were in the evidence, with the other facts and circumstances proved, they were material, and tended to strengthen the inference of defendant's guilt.

For the same reasons the court committed no error in permitting the state to prove that the pistol which the evidence tended to show belonged to the defendant, and which it tended to show was found in his possession the next morning after the deceased was killed the night before, was subsequently fired by one of the state's witnesses into a plank, and that the ball was extracted therefrom and weighed, and found to weigh 96¼ grains. This, in connection with the before mentioned evidence as to the weight of the bullets found in deceased's body, tended to show that the deceased was killed with a pistol of the same caliber as that belonging to defendant. The discrepancy in weight between the bullets so found in deceased's body and the one so fired from defendant's said pistol was not so great as to forbid an inference that each came from the same caliber of pistol. Whether they did so or not, no witness was asked to state, but this matter was properly left for the jury to ascertain by inference from the facts given, if such facts were believed by them. If the jury should find from such facts that the bullets did come from the same caliber of pistol, then that fact was a circumstance tending to connect the defendant with the commission of the crime, and, though not sufficient in itself to support a conclusion of guilt, was yet a material circumstance to be considered by the jury, along with the other facts and circumstances in the case—those showing a motive on the part of the deceased to commit the crime, recent threats by him to do so, an opportunity to do so, and his nearness to the scene of the crime at the time of its probable commission, etc.—in determining whether or not he was the guilty man. The fact that the state did not prove by positive evidence that the pistol from which the bullet was fired into the plank mentioned was the defendant's pistol did not render inadmissible circumstantial evi-

dence tending to show that fact. Any fact material to the main fact may, like the main fact itself, be proved as well by circumstantial evidence as by positive evidence. The firing of this pistol by the witness into a plank, and the extraction therefrom and weighing by him, before the trial, of the bullet so extracted, evidence of which was introduced by the state as before mentioned, cannot be condemned, as insisted by appellant's counsel, under the numerous authorities cited by him and found below, as an experiment.—*Evans v. State*, 109 Ala. 11, 19 South. 535; *U. S. v. Granger*, 172 Ala. 546, 55 South. 244; *Tesney v. State*, 77 Ala. 33; *Miller v. State*, 107 Ala. 40, 19 South. 37; *Buchanan v. State*, 109 Ala. 7, 19 South. 410; *Crane v. State*, 111 Ala. 45, 20 South. 590; *Whizenant v. State*, 71 Ala. 383; 1 Mayf. Dig. 323, 340. The act of the witness in firing the pistol into the plank, as testified to by him, partook of none of the character of and was in no sense an experiment, but the witness, in doing the act, was merely employing a well-known and practical means of extracting from one of the cartridges found in the pistol the bullet therefrom, for the purpose of weighing it, which he did do, and which he testified to the jury at the instance of the state in order that they, the jury, might compare such weight with the weight of the bullets found in the body of the deceased in determining whether they would believe that each came from the same pistol. Abrasion, and resultant reduction in the weight of the bullet, would likely follow from shooting it into a plank; hence it was entirely proper to prove the means employed in extracting from the pistol the bullet so weighed, as affording a basis for the jury to account for, on the theory of abrasion, the slight discrepancy between its weight and the weight of the bullets found in the body of deceased.

Charge 1 was properly refused.—*Seawright v. State,* 160 Ala. 33, 49 South. 325; 5 Mayf. Dig. 128, § 16.

Charge 2 was properly refused.—*Bohlman v. State,* 135 Ala. 48, 33 South. 44; *Bowen v. State,* 140 Ala. 66, 37 South. 233.

Charge 3 was also properly refused, as was so held in *Bohlman v. State,* 135 Ala. 50, 33 South. 44, which overruled *Gilmore v. State,* 99 Ala. 154, 13 South. 536. The former case has been subsequently followed.—*Oakley v. State,* 135 Ala. 35, 33 South. 693; *Pitman v. State,* 148 Ala. 617, 42 South. 993; *Bowen v. State,* 140 Ala. 66, 37 South. 233; *Fowler v. State,* 155 Ala. 28, 45 South. 913; *Phillips v. State,* 162 Ala. 24, 50 South. 194.

Charge 4 is so patently faulty as not to require the citation of authority for condemning it. Besides, if it were a good charge, it is fully covered by given charges, 5, 10, and 10½.

Charge 5 is covered by given charge 8. Besides, the charge as here worded, is not a good charge in a murder case for reasons pointed out in *Davis v. State,* 8 Ala. App. 159, 62 South. 1027.

Charge 6 is the affirmative charge.

Charge 7 was properly refused.—*Bowen v. State,* 140 Ala. 66, 37 South. 233.

Charge 8 is fully covered by given charge 16.

Charge 9 is clearly faulty. The jury may have a reasonable doubt as to how the killing occurred, and yet believe beyond a reasonable doubt that the defendant was guilty of doing the killing, and that with a pistol.

Charge 10 is a practical duplicate of refused charge 3, that has already been considered and condemned.

Charge 11 was properly refused.—*B. R., L. & P. Co. v. Adkins,* 8 Ala. App. 557, 62 South. 367.

It follows from what we have said that the judgment of conviction must be affirmed.

Affirmed.