MADDOX, Justice.
A jury convicted Edward C. Vrocher of third-degree burglary and second-degree sexual assault, and the trial judge sentenced him to 10 years in prison for the burglary conviction and to one year in prison for the sexual-assault conviction. However, the judge suspended 7 years of the 10-year sentence and ordered Vrocher to serve three years in prison on the burglary conviction. The Court of Criminal Appeals, on December 17, 1999, affirmed the convictions and sentences, with an unpublished memorandum. Vrocher v. State, (No. CR-98-1048) 796 So.2d 448 (Ala. Crim.App.1999) (table). Vrocher petitioned this Court for certiorari review, which we granted. For the reasons discussed below, we reverse and remand for further proceedings in the Court of Criminal Appeals.

Facts

Vrocher and his family lived next door to T.M. and her children. Her younger son, Z.D., was 10 years old when T.M. and her family moved into the neighborhood. Z.D. testified that Vrocher touched him on his genitalia once in the Vrocher home and that Vrocher would regularly come to Z.D.’s window at night and talk to Z.D. through the open window. Z.D. also testified that Vrocher touched him on his geni *797 talia one night through the open window of Z.D.’s bedroom. That night, T.M. heard noise from her son’s room and discovered Vrocher with his hands under her son’s sheets. Vrocher testified that he had never touched Z.D. on his genitalia and that, on the night T.M. saw him reaching through the window of her son’s room, he was rubbing Z.D. on his stomach in an effort to wake him up.

Discussion

The Court of Criminal Appeals held in its unpublished memorandum that Vrocher had not preserved for appellate review his argument that the trial judge erred in posing certain questions to Vrocher when he was on the witness stand. We granted certiorari review to consider that holding.
The record indicates the following colloquy occurred at the conclusion of the prosecutor’s cross-examination of Vrocher:
“Q. [By Mr. Hardesty, the prosecutor] And your actions toward the little boy were something you couldn’t help, weren’t they?
“A. [By Vrocher] Were my actions toward him something—
“Q. Going over at midnight to rub his stomach is something you just couldn’t help, wasn’t it, Mr. Vrocher?
“A. I didn’t go over to rub his stomach.
“MR. HARDESTY: Thank you. That’s all.
“THE COURT: But you rubbed his stomach when you got there, sir?
“A. There’s a difference in those two statements.
“THE COURT: Did you rub his stomach when you got there, sir?
“A. In an attempt to wake him, yes.
“THE COURT: If someone came to your child’s window between twelve midnight and one a.m. and stuck their arms through the window and proceeded to rub your child, would you consider that to be appropriate conduct?
“A. If someone — Would I consider that to be appropriate conduct?
“THE COURT: Yes, sir.
“A. No.
“THE COURT: And if someone kissed your son’s stomach, would you consider that to be appropriate conduct?
“A. No.
“THE COURT: And if your son [N.] allowed another man to call him daddy [sic]—
“A. Now, you said if anybody did that. If I did it, it would be different.
“THE COURT: It would be different.
“A. If I — You asked me if I — if anybody rubbed [N.]’s stomach. If I rubbed [N.]’s stomach I don’t think that would be inappropriate.
“THE COURT: No, no, that’s not what I said.
“A. You said if anybody.
“THE COURT: If someone other—
“A. You implied if it was somebody besides me, but if it was me and I was his daddy, it would be different.
“THE COURT: But you’re not [Z.D.’s] daddy, are you?
“A. Am I his biological father? No.
“THE COURT: But you let him call you daddy?
“A. During that period of time I was a father figure to him and that was something that was his choice.
“THE COURT: And if your son [N.] called another man daddy, would you consider that to be appropriate?
“A. If my son [N.] were calling someone else daddy I would think that I wasn’t doing my job.
*798 “THE COURT: But you were doing your job by letting [Z.D.] call you daddy?
“A. I didn’t say it was my job. We discussed — He said he wanted to— “THE COURT: Mr. Wilson, do you have any more questions for your client?
“MR. WILSON [defense counsel]: No, sir, but I would like to approach ' the bench, judge.
“THE COURT: All right. You may step down.”
(R.T. at 402-05.)
At that point in the proceedings, the trial judge dismissed the jury, and the following exchange took place:
“THE COURT: All right. Let the record reflect that the jury has gone out. Mr. Wilson has something he wants to put on it.
“MR. WILSON: Yes, sir. Your Honor, I would enter an objection to the Court interjecting questions to the witness that I view to be taking an adversarial side in the case. It would be reflective of his comments or amount to a comment on the evidence. And by his questions expressing doubt in his questions to this witness, we think it’s prejudicial to the defendant, the Court inserting itself into the question-and-answer period and by the questions that were asked and the argumentative nature with the witness in which they were asked. And I would ask for the record that the Court enter a mistrial.
“THE COURT: All right. First of all, your motion for a mistrial is denied. Secondly, I would take strident issue with your characterization as argumentative because I was very careful not to raise my voice and to ask those questions in a conversational tone. Secondly, Rule 614 of the Alabama Rules of Evidence states that the Court may interrogate witnesses, not question, interrogate whether they were called by the Court or by a party.
“This issue has come up before, the last time in the case of [Kmart Corp. v. Kyles, 723 So.2d 572 (Ala.1998)], which affirmed not only the vitality of the rule, but my right to ask questions. I, sir, am not a robot and I am not an advocate. My purpose is to seek the truth. And as long as I don’t take sides and as long as I do not become argumentative, under the law I have an absolute right to ask questions.
“I have twice told this jury that they are not to infer from anything I say or anything I do that I have an opinion as to the facts. If, however, you would like me to tell them a third time I will be more than happy to do so.
“MR. WILSON: No, I just interpose — I just point out to the Court that when the questions would come to the child or to some of the State’s witnesses and the Court didn’t interject or communicate with the witnesses. And when it came out in the defense that there were a number of questions asked by the Court that this was inappropriate behavior in trying to establish the facts or whatever, and I just thought that that would appear to the jury to be a reflection of the Court’s attitude toward the testimony of the witness and would convey that to them and thus be prejudicial, and that’s the reason for the motion.
“THE COURT: Okay. Your motion is obviously preserved.”
(R.T. at 405-07.)
A trial judge, of course, has the authority to question witnesses. Rule *799 614(b), Ala.R.Evid; Kmart Corp. v. Kyles, 723 So.2d 572 (Ala.1998). However, in doing so, the judge may not ask questions that assume the defendant is guilty; that convey to the jury the impression that the judge believes the defendant is guilty; or that assume the witness is testifying falsely. See Harris v. State, 583 So.2d 1360 (Ala.Crim.App.1991); committee comments to Rule 614(b), Ala.R.Evid.
In its unpublished memorandum, the Court of Criminal Appeals stated:
“The appellant contends that the trial court erred in denying his motion for mistrial because, he argues, ... the trial court improperly asked hypothetical questions of him which resulted in ineradicable prejudice to him.
“An examination of the record reveals that the appellant failed to preserve this argument for appellate review because it was not presented at the trial level. Perkins v. State, 715 So.2d 888 (Ala.Crim.App.1997) (a defendant is bound by the grounds of objection at trial and may not expand those grounds on appeal). May v. State, 710 So.2d 1362 (Ala.Crim.App.1997) (a statement of specific grounds of objection waives all grounds not specified and the trial court will not be put in error on grounds not assigned at trial).”
We have carefully examined the record and the other materials before us, and we conclude that defense counsel sufficiently preserved for appellate review the issue of the judge’s alleged improper conduct. We do not at this time, however, consider the merits of Vrocher’s argument on that issue, because the Court of Criminal Appeals has not considered them. Instead, we reverse the judgment of affirmance and remand for the Court of Criminal Appeals to address the merits of Vrocher’s argument. Because we are reversing for the error in not considering Vrocher’s argument regarding the questioning by the judge, we also do not consider other arguments presented in Vrocher’s certiorari petition and his brief.
The judgment is reversed and the cause is remanded for further proceedings in the Court of Criminal Appeals.
REVERSED AND REMANDED.
HOOPER, C.J., and HOUSTON, COOK, SEE, LYONS, BROWN, JOHNSTONE, and ENGLAND, JJ., concur.